# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUMMIT CONTAINER CORP., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18 C 1919 |
| COMMUNICATIONS TEST DESIGN, INC., | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO TRANSFER

Summit Container Corp. has sued Communications Test Design, Inc. for breach of contract and related claims. According to Summit's complaint, CTDI provides engineering and other services to the communications industry and did business with Summit, which supplied CTDI with customized storage and packaging products over a period of years through a series of express or implied agreements. Summit alleges that under the parties' agreement, it was required to keep a significant amount of inventory in stock to supply CTDI's needs. CTDI allegedly terminated the parties' agreement in late 2017, leaving Summit with inventory worth over $1 million, which CTDI has refused to purchase. This, Summit alleges, essentially put it out of business. Summit has sued to recover damages.

CTDI has moved to transfer the case to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). To obtain a

transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient." *Heller Fin., Inc. v. MidWhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir. 1986). "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Courts ordinarily give substantial weight to the plaintiff's choice of a forum, particularly when it is the plaintiff's home forum. *See In re Nat'l Presto Indus.*, 347 F.3d at 664 (plaintiff's choice "should rarely be disturbed"); *cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (common law forum non conveniens doctrine). CTDI says that this district is not Summit's home forum, because it is incorporated and has its principal place of business in Colorado. But Summit is no longer in business. It entered into an assignment for the benefit of creditors, and its "corporate restructuring officer," who is prosecuting this lawsuit on Summit's behalf, is located in Chicago. Thus for present purposes, this district effectively *is* Summit's home forum.

The other convenience factors considered under section 1404(a) do not outweigh Summit's choice of this district. CTDI emphasizes that its witnesses are all located in eastern Pennsylvania. But when witnesses are under the control of a party, as these are—they are all CTDI employees—the weight given to this factor is diminished, as it is likely that the party who employs the witnesses will be able to procure their live

2

testimony for trial without undue burden.  *See, e.g., Guignard v. Nat'l R.R. Passenger Corp.*, No. 11 C 124, 2012 WL 1108242, at *3 (N.D. Ill. Apr. 1, 2012).

CTDI also cites an interest-of-justice factor under section 1404(a).  It argues that caseloads in this district are far higher than in the Eastern District of Pennsylvania and that it takes far longer for a case to get to trial here than there.  If this were actually true, it might be a factor (though probably not a dispositive one) weighing in favor of transfer.  But CTDI's argument illustrates the danger of relying on raw data without a full understanding of what it actually means.  CTDI cites two figures from federal caseload statistics as of December 31, 2017.  On that date, there were 783 pending cases per judgeship in this district, as compared with 352 in the Eastern District of Pennsylvania, and the average time from filing to trial for a civil case was 34.9 months here, as compared with 21.3 months there.  The cases-per-judgeship figure is almost completely the product of a very large multidistrict litigation (MDL) proceeding pending in this district, *In re Testosterone Replacement Therapy Products Liability Litigation*, MDL No. 2545 ("*In re TRT*").  *In re TRT* is the fourth or fifth largest MDL in the entire country in terms of numbers of filed cases; as of the end of 2017, there were over 6,000 cases still pending within the MDL.[1]  Because there are 22 authorized judgeships in this district, that means that the average per-judge case totals are increased by about 300 per judge.  But each judge does not actually have 300 extra cases; all 6,000 suits within the *In re TRT* MDL are supervised by a single judge.  This means that the effective per-judge caseload figure—once the MDL cases are removed—is more like 450.  And because there are a significant number of senior judges in this district who take on full

---

[1] There is no comparable MDL proceeding that contributes to the per-judge caseload figures in the Eastern District of Pennsylvania.

or otherwise significant caseloads but are not counted in the total number of judgeships, the actual average civil caseload per active district judge is still lower—about 320 at present. In short, the effective per-judge caseload in both districts is indistinguishable. The caseload statistics are not a factor weighing in favor of transfer.

To be fair, the undersigned judge is the presiding judge in the *In re TRT* MDL proceeding, meaning that all of the cases in the MDL are assigned to the undersigned judge. But although the undersigned is, to be sure, quite busy due to the MDL, virtually all of the suits within the MDL are in a holding pattern, while the parties and the Court concentrate on relative handful exemplar, or "bellwether," cases. The undersigned has been and is fully able to manage his regular docket of cases efficiently and expeditiously.

The time-to-civil-trial figure, by contrast, actually is a fair comparison; apples are being compared to apples. But it is not a particularly meaningful comparison. Only about two percent of all federal civil cases go to trial; the other ninety-eight percent do not. And the time-to-trial figures are averages covering all judges and all types of cases; they say nothing about how long it takes to get to trial in any particular case, or, more specifically, in a case of the type at issue here. In any event, the Court will avoid this apparent inter-district disparity by setting a prompt and firm trial date. The case is set for trial on April 15, 2019 at 9:45 a.m., which is about thirteen months from the date CTDI removed the case to this district.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to transfer [dkt. no. 5]. The case is set for a status hearing on May 24, 2018 at 9:00 a.m., in

chambers (Room 2188).  Prior to that date, the parties are to confer to attempt to agree on a discovery and pretrial schedule, and they are to discuss the possibility of settlement.

Date:  May 15, 2018

_____
MATTHEW F. KENNELLY
United States District Judge